PEOPLE *v.* ASHER

1. CRIMINAL LAW—CHARGE AGAINST INMATE—"180-DAY RULE"—RE-
   QUIREMENTS.

   The 180-day rule governing the bringing to trial a person al-
   ready an inmate requires the taking of good faith action
   within 180 days by the prosecution to begin the process and
   the prosecution's proceeding promptly towards reading the
   case for trial; the statutory rule does not require actual trial
   within the 180-day period (MCLA §§ 780.131, 780.133).

2. CRIMINAL LAW—CHARGE AGAINST INMATE—"180-DAY RULE"—
   COMPLIANCE—GOOD FAITH.

   The test whether the statutory 180-day rule for bringing to trial
   a person already an inmate has been violated is whether the
   prosecution has taken good faith action within the statutory
   period and continued good faith in bringing the case to trial
   (MCLA §§ 780.131, 780.133).

3. CRIMINAL LAW—CHARGE AGAINST INMATE—"180-DAY RULE"—
   COMPLIANCE—GOOD FAITH.

   Trial court's conclusion that the prosecution commenced action
   against the defendant, in prison for another offense, within
   180 days and proceeded to trial in good faith after com-
   mencing the action was not clearly erroneous, even though trial

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 21 Am Jur 2d, Criminal Law § 249.
     Constitutional or statutory right of accused to speedy trial as
     affected by his incarceration for another offense.    118 ALR
     1037.
[5-7] 47 Am Jur 2d, Jury § 195 *et seq.*
[8] 47 Am Jur 2d, Jury § 301.
[9] 47 Am Jur 2d, Jury § 294 *et seq.*
[10] 47 Am Jur 2d, Jury § 265 *et seq.*
[11, 12] 16 Am Jur 2d, Conspiracy § 38.
     Admissibility as against conspirator of extrajudicial declarations
     of co-conspirator.   1 L Ed 2d 1780.
[13] 53 Am Jur, Trial § 798.
[14] 53 Am Jur, Trial §§ 527-529.

did not begin until nearly a year after the arraignment of the defendant, where under an arrest warrant the preliminary examination was held within 60 days of the defendant's arrest and arraignment, under the warrant, the delays in proceeding to trial were sometimes caused by (1) the defendant—failure of his counsel to appear, request for adjournments to obtain witnesses, (2) the prosecution—failure on at least two occasions to have the defendant brought to court from prison and (3) causes beyond either party's control—The Detroit Riot of 1967, and the trial judge's vacation, because the proceedings did move eventually and consistently toward trial, although often delayed.

4. CRIMINAL LAW—CHARGE AGAINST INMATE—"180-DAY RULE"—COMPLIANCE—GOOD FAITH PROSECUTOR'S DELAY.

Prosecutor's requesting adjournments and, thus, delaying the beginning of the trial of a defendant already in prison, does not necessarily preclude a finding that the prosecution moved in good faith towards trial (MCLA §§ 780.131, 780.133).

5. JURY—EXCUSING FOR CAUSE—BIAS—INQUIRY.

Excusing a venireman without permitting detailed inquiry into the bias the venireman indicates he possesses is not a commendable practice.

6. JURY—EXCUSING FROM DUTY—GOOD CAUSE—INQUIRY.

Veniremen should not be relieved of their duty unless good cause is demonstrated upon an adequate investigation.

7. JURY—EXCUSING FOR CAUSE—INQUIRY—VENIREMAN'S PERSONAL REASONS—DISCRETION.

Excusing a venireman for cause after the venireman had indicated that she did not feel she could fairly serve on jury and refusing to allow defense counsel to fully examine the venireman to ascertain specifically the venireman's reasons for wishing to be excused, although not the most appropriate course, was not an abuse of discretion where the trial court sensed that the reasons for wishing to be excused were highly personal.

8. JURY—EXCUSING FOR CAUSE—NON-CAPITAL CASES—MARIJUANA CASES—OPPOSITION TO DRUG LAW.

Excusing a venireman in a marijuana case who had stated that she believed marijuana was not a dangerous drug and that she would have difficulty enforcing the drug law was not error where the trial judge entertained serious and well-founded, legitimate doubts as to whether the venireman would have

been able to render a verdict consistent with the drug laws as written if the facts as elicited indicated a violation of those laws (MCLA §§ 335.153, 768.10; GCR 1963, 511.4, 785.1).

9. Jury—Excusing for Cause—Improper Verdict—Venireman's Opinion.

A prospective juror may be challenged for cause when that venireman has opinions or scruples which would improperly influence his verdict (MCLA § 768.10; GCR 1963, 511.4[5]).

10. Jury — Impartial Jury — Scope of Right — Non-Convicting Juror.

A defendant's right to an impartial jury does not encompass the right to a juror who would find it difficult to convict the defendant under any circumstances.

11. Criminal Law—Evidence—Hearsay—Coconspirator's Statement—Admissibility.

A coconspirator's out-of-court statement, uttered prior to the completion of the conspiracy and in the furtherance of the common unlawful enterprise is admissible against all the coconspirators.

12. Criminal Law—Evidence—Hearsay—Coconspirator's Statement—Admissibility.

Allowing an undercover police officer to testify that defendant's coconspirator had said that the defendant, charged with sale and possession of marijuana, would not be able to obtain marijuana until later in the evening was not violative of defendant's right to confront witnesses, because the statement was made before the ends of the criminal conspiracy had been completed.

13. Criminal Law—Lesser Included Offenses—Instructions to Jury.

A trial court should refuse requested instructions to the jury as to lesser included offenses where no evidence has been introduced to support a conviction of a lesser offense.

14. Criminal Law—Instructions to Jury—Refusal to Charge.

A judge may properly refuse to instruct the jury as requested where he has given essentially the same charge in his own words.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 Janu-

ary 5, 1970, at Detroit. (Docket No. 5673.) Decided April 20, 1971.

Donald Asher was convicted of possession of marijuana. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*George L. BeGole (Daniel H. French* and *Norman L. Zemke,* of counsel), for defendant.

Before: Lesinski, C. J., and J. H. Gillis and Quinn, JJ.

Lesinski, C. J. Defendant was charged with the sale and possession of marijuana and was subsequently convicted by jury of illegal possession of that drug. MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123). In an earlier opinion,[1] we dealt with defendant's allegation that the statutory "180-day" rule had been violated. MCLA §§ 780.131, 780.133 (Stat Ann 1970 Cum Supp §§ 28.969[1], 28.969[3]). Mindful of the requirement that the prosecutor must begin good faith action against an accused already in the custody of the Department of Corrections on another sentence within 180 days from the time the prosecutor receives notice of the accused's incarceration, *People* v. *Hendershot* (1959), 357 Mich 300, and concerned that the prosecutor's lack of diligence in transporting defendant from the State Prison of Southern Michigan at Jackson, Michigan, to court on several occasions (thus causing several delaying

---

[1] 21 Mich App 524.

adjournments) had a direct bearing on the prosecutor's good faith in bringing defendant to trial, we remanded the cause to the trial court for the making of a testimonial record for the purpose of permitting the trial court to redetermine the prosecutor's alleged violation of the "180-day" rule. This record on remand has been completed and we are now prepared to pass upon this and other assignments of error presented by defendant.

The statute does not require actual trial within the 180-day period, but only the taking of good faith action within that period by the prosecution to begin the process and the prosecution's proceeding promptly towards readying the case for trial. *People* v. *Hendershot, supra,* 304.[2] Thus, the test of whether the statute has been violated is whether the prosecutor has taken good faith action within the statutory period and the continued good faith in bringing the case to trial.

In *People* v. *Castelli* (1963), 370 Mich 147, the prosecutor's obtaining of a writ of *habeas corpus* to bring the accused before a magistrate for preliminary examination within the 180-day period was held to be such good faith action as to satisfy the mandates of the statute. Similarly, in *People* v. *Loney* (1968), 12 Mich App 288, we held that the prosecutor's moving for *nolle prosequi* and issuing a new complaint and warrant within the statutory

---

[2] However, this does not mean that the prosecutor may commence the criminal process within the period required by the statute and may thereafter take whatever time he desires to advance the case to trial. *People* v. *Hendershot* (1959), 357 Mich 300, 303, 304, notes: "If some preliminary step or action is taken, followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly, the statute opens the door to a finding by the court that good-faith action was not commenced as contemplated by section 3, thus requiring dismissal." This is not the situation in the instant case.

period preserved the jurisdiction of the trial court under the statute. Holding a preliminary examination within the 180 day period constitutes the taking of good faith action by the prosecution to start the proceedings in motion. *People* v. *Linscott* (1968), 14 Mich App 334.

The record on remand below shows that a warrant for defendant's arrest was issued on January 23, 1967, and defendant was arraigned thereunder on January 27, 1967. Preliminary examinations were scheduled for February 1, 1967, and February 2, 1967, but were adjourned because defendant's co-defendants were unable to obtain counsel. A preliminary examination set for February 15, 1967, was adjourned because defendant had not been brought to the examination and remained in Jackson Prison. The next preliminary examination was to be heard on February 27, 1967, but the prosecution requested an adjournment since one of the principal witnesses was an undercover agent engaged in secret police work and was unavailable on that date. The preliminary examination was finally held on March 6, 1967; defendant was bound over for trial. It is to be noted here that the prosecutor thus set the criminal process in motion well within the statutory 180-day period.

On May 16, 1967, the prosecution filed the information against defendant and defendant was to be arraigned on the information on May 27, 1967. However, on that date defendant's attorney failed to file an appearance, apparently because defendant was having financial difficulty. The arraignment was postponed until June 8, 1967, when the prosecution again failed to cause defendant to be transported from Jackson Prison to court. It was about this time when the court records were erroneously

made to reflect defendant's arraignment on the information.[3]

The prosecution set a trial date for August 2, 1967. However, the City of Detroit became embroiled in a massive civil disorder from July 23 through July 26; the effect of this civil disturbance upon the trial courts of the metropolitan Detroit area was to inundate the courts with thousands of additional cases. Because of the paralyzing effect of this onerous judicial workload, the August 2, 1967 trial date was quite reasonably adjourned until September 18, 1967. On this latter date, the prosecution again failed to have defendant escorted from Jackson Prison to court; the trial was adjourned until November 13, 1967. On that date, however, defendant's attorney pointed out that, despite court records to the contrary, defendant had never been arraigned on the information. One week later, on November 20, 1967, defendant presented motions involving questions of entrapment and indorsement of a codefendant, Thomas Medina, as a *res gestae* witness. A trial date of December 10, 1967, had been set when the trial date of November 13, 1967, was utilized as an arraignment date. On December 10, the matter was adjourned again since the trial judge to whom the case had been assigned was out of town on vacation. A February 19, 1968 trial date was scheduled. However, on that date defendant requested an adjournment until March 27, 1968, to obtain Medina as a witness; Medina was in fact reached by defendant by way of a writ of *habeas corpus*. On March 27, 1968, a jury was selected; *voir dire* continued until March 28, 1968. On this date, trial began.

As a result of the above testimony, the trial court concluded on remand that, as a matter of fact, the

---

[3] Defendant's attorney caught this error on November 13, 1967, and defendant was finally arraigned on that date.

prosecution commenced action against defendant in good faith within 180 days and proceeded to trial in good faith thereafter. We are unable to disagree with this determination. The record reveals that several of the delays in the proceedings below were attributable to the prosecution's lack of diligence in securing the attendance of defendant in court. As our earlier opinion indicates, it is the duty of the prosecution to see that a prisoner serving a sentence in a corrective institution on another charge be brought before the court to answer a present charge. Nevertheless, in the case before us, the prosecution did initiate action against defendant within the statutory period. The proceedings below moved eventually and consistently towards trial even though impeded by repeated delays, some of which were attributable to the prosecution, some which were due to moves made by defendant, and some which were beyond the control of anyone. The fact that some of the delays were occasioned by adjournments requested by the prosecution does not necessarily preclude a finding that the prosecution moved in good faith towards trial. See *Kelley* v. *Kropp* (CA 6, 1970), 424 F2d 518.

Second, defendant complains of the trial court's excusing a venireman for cause after the venireman had indicated that she did not feel she could fairly serve on the jury and of the trial court's refusal to allow defense counsel on *voir dire* to fully examine the venireman so as to ascertain specifically what the venireman's reasons were for wishing to be excused. It is not a commendable practice for trial judges to excuse a venireman without permitting detailed inquiry into the bias a venireman indicates he possesses. Veniremen should not be relieved of their duty unless good cause is demonstrated upon an adequate investigation into the matter. A trial judge

has wide discretion as to the scope of examination of veniremen on *voir dire*. GCR 1963, 511.3; *People* v. *Lockhart* (1955), 342 Mich 595. It would have been more appropriate for the court to determine specifically whether the reasons the venireman had were grave enough to warrant dismissal. However, the trial court sensed that these reasons were highly personal to the venireman, and, in its discretion, refusing to subject the venireman to searching *voir dire* questioning. Under the circumstances of this case, we find no abuse of discretion in this regard.

Similarly, defendant attempts to persuade us that the trial court erroneously excluded another venireman for cause when the venireman advanced an opinion that marijuana was not a dangerous drug, and, as a result, she would have difficulty enforcing the drug laws. Defendant analogizes to *Witherspoon* v. *United States* (1968), 391 US 510, 522 (88 S Ct 1770, 1777, 20 L Ed 2d 776, 784, 785), which held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."

We do not find *Witherspoon* to be controlling in the case before us. The United States Supreme Court has declined to extend the application of *Witherspoon* to cases other than those which involve the death penalty. *Boulden* v. *Holman* (1969), 394 US 478, 483, 484 (89 S Ct 1138, 1141, 22 L Ed 2d 433, 438, 439), indicates that the *Witherspoon* rationale does not, as yet, affect cases where veniremen who are opposed to penitentiary, noncapital punishments are excluded from jury service:

"As the initial portion of this colloquy and that set out in footnote 6 indicate, Alabama law also

authorizes the exclusion of any potential juror who has a 'fixed opinion against  \*  \*  \* penitentiary' punishment.  Ala Code, Tit 30, § 57.  Two veniremen were excused when they merely responded affirmatively to the disjunctively phrased question whether they had 'a fixed opinion against capital or penitentiary punishment.'  It is thus not possible to discern from the record which type of punishment they objected to, although the more likely assumption would be that it was capital punishment.  *We did not in Witherspoon pass upon the validity of the 'penitentiary' analogue to death-qualification of jurors, and we intimate today no opinion regarding that question."*  (Emphasis supplied.)[4]

The trial judge entertained serious doubts as to whether the venireman would have been able to render a verdict consistent with the drug laws as written if the facts as elicited indicated a violation of those laws.  A review of the record convinces us that the trial court's concern that this venireman's distaste for the drug laws would have influenced her decision was indeed legitimate and well-founded.[5]  GCR 1963, 511.4(5) permits a prospective juror to be challenged for cause when that person has opinions or scruples which would improperly influence his verdict.[6]  Further, a Michigan statute, MCLA § 768.10 (Stat Ann 1962 Rev § 28.1033), provides as follows:

"The previous formation or expression of opinion or impression, not positive in its character, in reference to the circumstances upon which any criminal prosecution is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, such opinion or im-

---

[4] Fn 7 of the Court's opinion.  *Boulden, supra.*

[5] It appears that the juror volunteered her opinion about the drug laws when the trial court asked the jurors if they could enforce the drug laws.

[6] GCR 1963, 785.1, extends the court rules to criminal cases.

pression not being positive in its character, or not being based on personal knowledge of the facts in the case, shall not be a sufficient ground of challenge for principal cause, to any person who is otherwise legally qualified to serve as a juror upon the trial of such action: Provided, That the person proposed as a juror, who may have formed or expressed, or has such opinion or impression as aforesaid, shall declare on oath, that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial: *Provided further, That the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror.*" (Emphasis supplied.)

Defendant's right to an impartial jury does not encompass the right to a juror who would find it difficult to convict defendant under any circumstances. See *People* v. *Bigge* (1941), 297 Mich 58, 64, 65.

Next, we are told that the admission of testimony of an undercover police agent as to an inculpatory statement made by one of defendant's co-conspirators, Thomas Medina, is violative of the principles enunciated by *Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476). *Bruton* held that the admission of a co-defendant's confession in a joint trial violated an accused's constitutional right of cross-examination as secured by the confrontation clause, despite the trial court's giving of a limiting instruction to the jury that it ought not to consider such extra-judicial statements against a nondeclarant. In the case at bar, the police officer testified that Medina told him that the former would not be able to obtain the drugs until later that evening. This statement was made before the ends of the criminal conspiracy had been completed but defend-

ant was evidently out of earshot when Medina uttered the statement.[7]

It is well-established that hearsay declarations of co-conspirators, uttered prior to the completion of the conspiracy and in the furtherance of the common unlawful enterprise, are admissible against all of the co-conspirators. *People* v. *Nankervis* (1951), 330 Mich 17; *People* v. *Lohn* (1970), 21 Mich App 235. Further, the *Bruton* decision itself limits its holding to those situations where the statement sought to be admitted is one which is inadmissible under the traditional rules of evidence; the Court declined to extend *Bruton* where a recognized hearsay exception is involved. *Bruton* v. *United States, supra,* footnote 3, 391 US at 128 (88 S Ct at 1623, 1624, 20 L Ed 2d at 480, 481). See, also, *Dutton* v. *Evans* (1970), 400 US 74 (91 S Ct 210, 27 L Ed 2d 213); *Campbell* v. *United States* (CA 6, 1969), 415 F2d 356; *People* v. *Kelley* (1971), 32 Mich App 126.

*Kay* v. *United States* (CA 9, 1970), 421 F2d 1007, is substantially similar to the case before us. In that case, a prosecution for sale of drugs, a police agent testified that defendant's co-conspirator told him that drugs offered for sale were of good quality and from Mexico. The Court held that pre-arrest declarations of a co-defendant made in the prosecution of a common scheme were admissible since *Bruton* does not preclude the admission of such statements. As such, we hold that the admission of the testimony of the police officer did not violate defendant's right to confront witnesses.

Defendant's contention that the trial court's refusal to submit lesser, included offense instructions to the jury as to attempted sale and attempted pos-

---

[7] Medina was originally scheduled to be tried jointly with defendant but pleaded guilty to a lesser included offense. See *People* v. *Shirk* (1970), 383 Mich 180.

session of marijuana is also without merit. As was well stated in *People* v. *Stevens* (1968), 9 Mich App 531, 533, 534:

"Where a request has been made to charge on a lesser included offense, * * * the requested instructions must be given; failure to do so would constitute error. *People* v. *Jones* (1935), 273 Mich 430. If, on the other hand, no evidence has been presented to support a conviction of the lesser offense, then the requested instruction should be refused. *People* v. *Utter* (1921), 217 Mich 74; *People* v. *Hearn* (1958), 354 Mich 468."

While the prosecution introduced much evidence linking defendant with the commission of the completed crime, defendant advanced no evidence compatible with the lesser offenses. The trial judge correctly declined to give the requested instructions.

Finally, defendant assigns as error the trial court's refusal to instruct the jury that, as the trier of fact, it is the ultimate arbiter of the credibility of a witness and that, in this function, it may refuse to believe and disregard the whole, or any part, of a witness's testimony. It is fundamental that jury instructions must not be isolated and must be read in their entirety; a trial judge may properly refuse to instruct as requested when he has essentially given the charge in his own words. *People* v. *Iron* (1970), 26 Mich App 235; *People* v. *Mayberry* (1970), 25 Mich App 677. We find that the charge which defendant contends should have been given was, in fact, essentially covered by the trial judge when he instructed that:

"Now, this is so, members of the jury, because the credibility of all witnesses is for you to decide. You are the sole judges of credibility of the witnesses sworn here in open court before you, and of the weight to be given their testimony.

"Now, members of the jury, a credible witness is one who gives competent testimony worthy of belief. In determining the credibility of the witness, you may consider his conduct, manner and bearing on the witness stand, his interest in the outcome of the case, his opportunity to know and remember the events about which he testifies, his willingness to speak the truth and all the surrounding circumstances that show his willingness to testify to the truth, and his reliability or unreliability, his apparent fairness or want of fairness, the fact of whether the witness has been corroborated or contradicted by other witnesses, the probability or improbability of the truth of the statements that he makes in view of all the other evidence and the other facts and circumstances apparent in the trial."

Finding no error, we affirm. Bond is hereby cancelled and defendant is ordered remanded to serve the sentence imposed.

Affirmed.

All concurred.