PEOPLE v SCHINZEL (ON REMAND)

Docket No. 44156. Submitted June 22, 1978, at Detroit.—Decided October 3, 1978. Opinion on remand filed May 19, 1980. Leave to appeal applied for.

Joseph Schinzel was convicted of second-degree murder, Recorder's Court of Detroit, James A. Hathaway, J. Defendant appealed, and the Court of Appeals reversed on the basis of violation of the 180-day rule for bringing a prisoner to trial on an untried warrant, indictment or information. 86 Mich App 337 (1978). The people sought leave to appeal to the Supreme Court which, in lieu of granting leave, reversed the Court of Appeals and remanded for the taking of testimony at the trial court regarding the cause of the delay in bringing the defendant to trial and for subsequent review of that testimony by the Court of Appeals. 406 Mich 888 (1979). The trial court has taken the testimony and the Court of Appeals has now reviewed that testimony, which indicated that the delay was caused by a congested Recorder's Court docket brought about by a change in that court's docketing procedure. *Held:*

The change in docketing procedures, which resulted in a large increase in the caseload of the trial judge, make the delay in this case an excusable delay. Therefore, there was no violation of the 180-day rule.

Affirmed.

R. M. MAHER, P.J., dissented. He would hold that the changeover in docketing procedure could have been accomplished in a manner to ensure compliance with the 180-day rule in those cases in which the defendants were incarcerated and that the delay was, therefore, inexcusable for purposes of the statute. He would reverse and discharge the defendant.

OPINION OF THE COURT

1. CRIMINAL LAW — INCARCERATED DEFENDANTS — 180-DAY RULE — STATUTES.

Good faith action to commence proceedings on an untried infor-

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 249.
[2, 3, 5] 21 Am Jur 2d, Criminal Law § 251.
[4] 21 Am Jur 2d, Criminal Law §§ 242, 547.

mation or indictment against an inmate of a penal institution must be initiated within 180 days of receipt by the prosecutor of the requisite notice or the trial court loses jurisdiction over the matter; once such good faith action is taken, jurisdiction is lost only if the initial action is followed by inexcusable delay (MCL 780.131, 780.133; MSA 28.969[1], 28.969[3]).

2. CRIMINAL LAW — INCARCERATED DEFENDANTS — DELAY IN TRIAL — DOCKET CONGESTION.

A delay in bringing a prisoner to trial on an untried information or indictment is inexcusable if it results from chronic docket congestion alone; however, a delay resulting from short-term docket congestion attributable to exceptional circumstances which hamper the normally efficient functioning of the trial court is an excusable delay.

3. CRIMINAL LAW — INCARCERATED DEFENDANTS — DELAY IN TRIAL — DOCKETING PROCEDURE — STATUTES.

A delay in bringing a prisoner to trial which was caused by a change in docketing procedure in Detroit Recorder's Court was excusable; therefore, the court did not lose jurisdiction to try the case under the statute which requires that proceedings against an inmate of a penal institution on an untried information must be initiated within 180 days of receipt by the prosecutor of the requisite notice (MCL 780.131; MSA 28.969[1]).

DISSENT BY R. M. MAHER, P.J.

4. CRIMINAL LAW — INCARCERATED DEFENDANTS — 180-DAY RULE — STATUTES.

*The purpose of the requirement that an inmate of a penal institution is to be brought to trial on an untried charge within 180 days of the prosecutor's receipt of the requisite notice is to give the incarcerated defendant with charges pending against him the opportunity to have all of the sentences run concurrently (MCL 780.131; MSA 28.969[1]).*

5. CRIMINAL LAW — INCARCERATED DEFENDANTS — DELAY IN TRIAL — DOCKETING PROCEDURE — STATUTES.

*A delay in bringing a defendant to trial, caused by a changeover in the docketing system of Detroit Recorder's Court wherein the assigned judge received an increase in caseload, is not an excusable delay for purposes of the statute which requires that a prisoner with untried charges against him must be brought to trial within 180 days of receipt by the prosecutor of the requisite notice (MCL 780.131; MSA 28.969[1]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Robert Sheiko,* Assistant Prosecuting Attorney, for the people.

*Gerald M. Lorence,* for defendant on appeal.

Before: R. M. Maher, P.J., and J. H. Gillis and Bronson, JJ.

## On Remand

J. H. Gillis, J. The defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, by a Detroit Recorder's Court jury on May 23, 1977. He appealed to this Court arguing, *inter alia,* that the trial court lacked jurisdiction due to the asserted violation of the 180-day rule. MCL 780.131; MSA 28.969(1).

In a 2-to-1 opinion, this Court reversed the defendant's conviction and dismissed the charges against him, MCL 780.133; MSA 28.969(3), ruling that more than 180 days had elapsed from the time of the charge to the trial and that the people had not met the burden of establishing good faith action to comply with MCL 780.131; MSA 28.969(1). *People v Schinzel,* 86 Mich App 337; 272 NW2d 648 (1978) (J. H. Gillis, J., dissenting).

The people thereafter sought leave to appeal to the Supreme Court. In an order dated March 13, 1979, that Court, in lieu of leave to appeal, reversed the judgment of the Court of Appeals and remanded the case to the trial court for the making of a testimonial record to determine the cause of the delay between defendant's arraignment and trial. The order further stated that "[a]fter the

testimonial record is prepared, the Court of Appeals shall determine whether or not MCL 780.131; MSA 28.969(1) has been violated". *People v Schinzel,* 406 Mich 888 (1979).

Pursuant to that order, testimonial hearings were held on April 18 and 25 and May 1, 1979. The transcripts of those hearings having been made available to this Court, we proceed to determine whether the statute has been violated.

Jurisdiction is not lost if the defendant does not go to trial within 180 days. The statutes, MCL 780.131 and 780.133, require only that good faith action to commence proceedings be initiated within the six-month time limit, *People v Castelli,* 370 Mich 147; 121 NW2d 438 (1963). Thereafter, jurisdiction is lost only if the initial action is followed by an "inexcusable delay". *People v Hendershot,* 357 Mich 300, 303-304; 98 NW2d 568 (1959).

Here, the prosecutor took sufficient good faith action to commence proceedings within the statutory period. The parties do not argue the contrary. The question presented, thus, is whether the delay which followed was such as to excuse compliance with the 180-day limitation. The answer is that it was.

The delay in the present case was occasioned by docket congestion in Detroit Recorder's Court. A delay which results from chronic docket congestion alone constitutes an inexcusable delay.[1] *People v Forrest,* 72 Mich App 266; 249 NW2d 384 (1976). A delay which results from short-term docket congestion, attributable to exceptional circumstances

---

[1] The people, by way of supplemental brief, argue, as they argued when the matter was originally before this Court, that delays attributable to the judiciary are not to be charged against the prosecution. The argument was and still is without merit. *People v Forrest,* 72 Mich App 266; 249 NW2d 384 (1976).

which hamper the normally efficient functioning of
the trial court, constitutes an excusable delay.
*People v Forrest, supra,* at 273, ABA Standards,
Speedy Trial, § 2.3(b) (1968), *People v Asher,* 32
Mich App 380; 189 NW2d 148 (1971). We find that
the delay here falls within the latter category.

The delay between the original trial date of
November 15, 1976, and the eventual trial date of
May 17, 1977, was occasioned by the decision of
the Recorder's Court bench, with the approval of
the Supreme Court, to return to the individual
docket system of case assignments.

For the first ten months of 1976, Recorder's
Court utilized the central docket system. Under
that system, the examining magistrate, after bind-
ing a defendant over, would assign the case to a
Recorder's Court judge for the purpose of conduct-
ing all pretrial proceedings. The case remained on
that judge's docket until the parties were prepared
to sign a ready-for-trial certificate. The filing of the
signed certificate concluded that judge's involve-
ment with the case. The case was then transferred
to the central docket and assigned a trial date. On
the trial date, the presiding judge would assign the
case for trial to any judge who was then available.

The central docket system proved ineffective. In
October, 1976, the decision was made to return
Recorder's Court to the individual docket system.
Under that system the pretrial judge retained the
case until trial or other final disposition. The effect
of this change in docketing systems was to transfer
back to each pretrial judge those of his cases
which had been transferred to the central docket.
During the three-month period which followed this
change, the trial judge in the instant case received
back at least 400 pending cases. This influx of
cases, of which the defendant's was one, caused
the six-month delay in question.

On these facts, we are satisfied that the delay was an excusable one. The people have made an "affirmative showing of exceptional and unavoidable circumstances which hamper the normally efficient functioning of the trial courts". *People v Forrest,* 273. There was no violation of the 180-day rule. The defendant's conviction is affirmed.

BRONSON, J., concurred.

R. M. MAHER, P.J. *(dissenting).* I must dissent from the majority's conclusion finding that the delay in bringing this defendant to trial was excusable because of the change in docketing systems in Detroit Recorder's Court.

The 180-day rule, MCL 780.131; MSA 28.969(1), provides that an inmate of a penal institution who is charged with a criminal offense "shall be brought to trial within 180 days" of receipt of the requisite notice. If trial is not had within the 180-day period, the court loses jurisdiction over the defendant. The purpose of the 180-day rule is to give the incarcerated defendant with charges pending against him the opportunity to have all of the sentences run concurrently. *People v Loney,* 12 Mich App 288, 292; 162 NW2d 832 (1968).

In the case at bar, the defendant was arraigned on the warrant on April 14, 1976. A preliminary examination was held on June 6, 1976. A pretrial was held on June 11, 1976. On July 30, 1976, the trial date was set for November 15, 1976. On October 13, 1976, the prosecutor requested an adjournment of the trial until after December 1, 1976, because of the unavailability of a witness who was in the armed forces. The request was granted. Because the Recorder's Court was then switching away from a central docket system, the

case was reassigned. on December 2, 1976, a new pretrial was held, at which time the judge set a trial date of May 17, 1977.

The statute does not require actual trial within the 180-day period, but only the taking of good faith action to bring the case to trial. *People v Hendershot,* 357 Mich 300; 98 NW2d 568 (1959), *People v Hill,* 402 Mich 272; 262 NW2d 641 (1978).

In *People v Asher,* 32 Mich App 380; 189 NW2d 148 (1971), this Court excused delays in complying with the 180-day rule where the court system was congested with thousands of additional cases due to the 1967 riot. This overload of the system was outside of the court's control, and some delay was inevitable despite all good faith efforts. Even so, the postponement in *Asher* due to court congestion was from August 2, 1967, until September 18, 1967, or approximately six weeks.

In *People v Forrest,* 72 Mich App 266; 249 NW2d 384 (1976), there was a 215-day delay not attributable to defendant, from March 29, 1975, until October 28, 1975. The prosecution contended that this delay was caused by the trial court in scheduling the case for trial due to docket congestion, was therefore an excusable delay, and should not be charged against the people. The Court said, 72 Mich App 273:

"In the case at bar the people have not made an affirmative showing of unavoidable delays which might justify this inaction. A mere recitation of the factor of a crowded docket, without more, cannot warrant visiting on the incarcerated defendant a longer imprisonment than might otherwise be in store. If congestion and delay result from inadequate court staffing or funding, the inevitable results of those delays must fall upon the people, who have the power to remedy court congestion.

\* \* \*

"We hold that, if the defendant has not contributed to the delay, a period of otherwise unexplained inaction in excess of 180 days in the prosecution of a charge pending against an inmate is per se a violation of the statute, unless the people make an affirmative showing of exceptional and unavoidable circumstances which hamper the normally efficient functioning of the trial courts."

In the case at bar, the trial judge testified on remand about the backlog of cases in the Detroit Recorder's Court which was caused by the change in docketing system. He stated that at the time of the change-over, he had 256 cases, with 316 defendants, 60 of whom were in jail. His method of setting the cases for trial was "to set as early a trial as possible for those persons who were charged for serious offenses, capital offenses and were also in jail". However, there is no indication whatsoever on this record that the trial judge took into account whether the incarcerated defendants were subject to the 180-day rule in setting the trial date.

I would find that the congestion in the Detroit Recorder's Court was more analogous to the *Forrest* chronic congestion problem than to the *Asher* riot repercussions. While the change in procedures may have caused some judges to be assigned a heavier caseload than in their previous experience, there was no actual increase in the number of cases to be disposed of. Certainly, this new docketing system was a procedure under the direct control of the court, and could have been adjusted and manipulated to ensure compliance with the 180-day mandate. The fact that all jailed persons received the same priority in the eye of the judge would militate against a finding of "exceptional and unavoidable circumstances" in setting a trial

date six months in the future for this defendant.
Those incarcerated defendants who were entitled
to be tried within 180 days should have received
priority.

I would reverse and would discharge the defendant.