PEOPLE v GAMBRELL

Docket No. 65963. Submitted June 8, 1983, at Detroit.—Decided
    December 19, 1983. Leave to appeal denied, 419 Mich —.

In this case involving the application of the 180-day rule the facts
    indicate that the defendant, Benny Gambrell, was a prison
    inmate in a halfway house when, on June 29, 1981, the prose-
    cutor issued a complaint charging the defendant with man-
    slaughter. Prior to such time, or soon thereafter, the defendant
    fled the state. On July 3, 1981, he was arrested in Arkansas.
    Although he initially refused to waive extradition, he waived
    extradition on October 7, 1981. Since the Department of Correc-
    tions was seeking extradition of defendant as an escapee, the
    prosecutor did not proceed to seek extradition on its own for
    manslaughter. However, the prosecutor informed the depart-
    ment about the manslaughter complaint. The defendant was
    returned to Michigan on October 17, 1981. The prosecutor was
    not, however, informed of defendant's return and by chance
    found out in February, 1982. Soon thereafter, the prosecutor
    petitioned for a writ of habeas corpus to procure defendant to
    prosecute him. The defendant was subsequently arraigned in
    the Detroit Recorder's Court on March 6, 1982, and the prelimi-
    nary examination was held on March 15, 1982. On June 3,
    1982, the trial court, Henry L. Heading, J., granted the defen-
    dant's motion to dismiss the manslaughter charge ruling that
    jurisdiction had been lost because of a violation of the 180-day
    rule. The people appeal. *Held:*

    D. L. SULLIVAN, J., concluded:

    1. Supreme Court precedent of September 13, 1982, which
    determined that the 180-day rule applied to prison inmates,

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law §§ 814, 857, 858.
[2] 21A Am Jur 2d, Criminal Law §§ 653, 659, 861.
    27 Am Jur 2d, Escape, Prison Breaking and Rescue § 9.
    Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.
[3] 21 Am Jur 2d, Criminal Law § 410.
[4, 5] 21 Am Jur 2d, Criminal Law § 408 *et seq.*
[6, 7] 21A Am Jur 2d, Criminal Law § 863.

even though it has limited retroactive activity, applies to this case.

2. Even if the 180-day period started on June 29, 1981, the 180-day period was tolled from June 29, 1981, to October 17, 1981, because defendant was an escapee fighting extradition during that period.

3. The trial court did not lose jurisdiction and, therefore, erred in dismissing the case. Only 132 days had elapsed when the prosecution petitioned for habeas corpus. The 180 days had not expired by the time defendant was arraigned or the preliminary examination was held. Holding the preliminary examination within the 180-day period was sufficient good faith compliance with the rule.

4. He would reverse and remand.

D. F. WALSH, P.J., concurred in reversal of the order granting defendant's motion to dismiss and concluded:

1. The trial court correctly ruled that the 180-day statutory period began to run on October 17, 1981.

2. The statutory period did not begin to run upon issuance of the warrant, since defendant was not incarcerated in a state prison or under detention in a local facility awaiting such incarceration at that time. Rather, the period began to run when, while the warrant was pending, defendant was returned to Michigan for incarceration.

3. The prosecution took good faith action to bring defendant to trial during the 180-day period following defendant's return to Michigan. The trial court, therefore, did not lose jurisdiction.

Reversed and remanded.

BEASLEY, J., concurred in the reversal but wrote separately to indicate his reasons. He concluded:

1. The 180-day period began to run on October 17, 1981.

2. The delay from October 17, 1981, to February 26, 1982, was not the fault of the prosecution or the defendant.

3. Good faith effort by the prosecutor does not necessarily stop the 180-day rule from running. The purpose of the statute is to secure a speedy trial for inmates.

4. The 180-day period would have expired in April, 1982. Defendant moved to dismiss under the 180-day rule in a motion dated April 19, 1982, and filed April 20, 1982. The court granted dismissal on May 25, 1982. Such ruling was premature since jurisdiction had not been lost at that point.

OPINION OF D. L. SULLIVAN, J.

1. CRIMINAL LAW — SPEEDY TRIAL — INMATES — UNTRIED CHARGES
   — 180-DAY RULE — JUDICIAL PRECEDENT — RETROACTIVE APPLI-
   CATION.

   The Supreme Court's determination that the 180-day rule regard-
   ing the disposition of untried warrants or complaints against
   prisoners applies to prison inmates has limited retroactive
   effect; the Supreme Court's decision provided that it shall only
   apply to existing and future untried warrants, indictments,
   informations or complaints and to cases pending on direct
   review where the issue is preserved.

2. CRIMINAL LAW — SPEEDY TRIAL — INMATES — UNTRIED CHARGES
   — 180-DAY RULE — INMATE'S UNAVAILABILITY.

   The statutory 180-day period for bringing a penal inmate to trial
   on pending untried charges is tolled during the time when the
   prosecution cannot make good faith efforts to bring the defen-
   dant to trial because the defendant has escaped from the penal
   institution and is fighting extradition; the prosecution is not
   required to do a useless act in such a situation (MCL 780.131;
   MSA 28.969[1]).

3. CRIMINAL LAW — SPEEDY TRIAL — INMATES — UNTRIED CHARGES
   — 180-DAY RULE.

   The 180-day rule regarding the disposition of untried warrants or
   complaints against prisoners does not require the prosecution
   to bring the defendant to trial within that period; the prosecu-
   tion is, instead, required to expend good faith efforts to com-
   mence proceedings against the defendant within 180 days; the
   holding of a preliminary examination within the 180-day period
   may be found to constitute sufficient compliance with the rule
   (MCL 780.131; MSA 28.969[1]).

OPINION OF D. F. WALSH, P.J.

4. CRIMINAL LAW — SPEEDY TRIAL — INMATES — COMMENCEMENT OF
   PROCEEDINGS — 180-DAY RULE.

   *The 180-day statutory period which controls the time for com-
   mencing a criminal prosecution against a prison inmate on
   outstanding warrants begins with the coincidence of either of
   following conditions 1 or 2 and condition 3: (1) the issuance of a
   warrant, indictment or complaint against a person incarcerated
   in a state prison or under detention in any local facility
   awaiting incarceration in any state prison; or (2) the incarcera-
   tion of a defendant in a state prison or the detention of such
   defendant in a local facility to await such incarceration when
   there is an untried warrant, indictment, information or com-
   plaint pending against such defendant; and (3) the prosecutor*

*knows or should know that the defendant is so incarcerated when the warrant, indictment, information or complaint is issued or the Department of Corrections knows or should know that a warrant, indictment, or complaint is pending against one in their custody (MCL 780.131; MSA 28.969[1]).*

5. Criminal Law — Speedy Trial — Inmates — Commencement of Proceedings — 180-Day Rule — Good Faith Compliance.

*The 180-day rule regarding the disposition of untried warrants or complaints against prisoners may be satisfied where the prosecution takes good faith action to bring the defendant to trial within the 180-day period (MCL 780.131; MSA 28.969[1]).*

Opinion of Beasley, J.

6. Criminal Law — Speedy Trial — Inmates — 180-Day Rule.

*The failure to bring an inmate to trial on untried warrants within 180 days triggers application of the 180-day rule regarding the disposition of untried warrants or complaints against prisoners; at such a point, the burden falls on the prosecution to justify the delay (MCL 780.131; MSA 28.969[1]).*

7. Criminal Law — Speedy Trial — Inmates — 180-Day Rule — Good Faith Compliance.

*The purpose of the statutory 180-day rule regarding the disposition of untried warrants or complaints against prisoners is to secure a speedy trial for inmates; thus, a good faith effort to comply with the rule by the prosecutor does not necessarily stop the 180-day period from running (MCL 780.131; MSA 28.969[1]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Edick & Esper* (by *David J. Esper),* for defendant on appeal.

Before: D. F. Walsh, P.J., and Beasley and D. L. Sullivan,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

D. L. SULLIVAN, J. On June 3, 1982, the trial court granted defendant's motion to dismiss the charge of manslaughter, MCL 750.321; MSA 28.553. The prosecution appeals as of right.

On June 29, 1981, the prosecution issued a complaint in the present case against defendant. Although the record is somewhat unclear, the parties have assumed that defendant was a prison inmate in a halfway house at the time. However, if he had not done so already, defendant very soon afterward fled the state. On July 3, 1981, he was arrested in Arkansas. Three days later, the Department of Corrections asked him if he would waive extradition. Although he intially refused, he in fact waived extradition on October 7, 1981.

Unless a prisoner waives extradition, it normally takes between three months and one year to extradite him. Noticing that the Department of Corrections was seeking extradition of defendant as an escapee, the prosecution decided not to proceed to seek extradition on its own for manslaughter. It did, however, inform the Department of Corrections about the manslaughter complaint.

Defendant was returned to Michigan on October 17, 1981. However, rather than informing the prosecution that defendant was back, the Department of Corrections merely processed him through the prison system. By chance, the prosecution found out about defendant's return in February, 1982. Soon after, it petitioned for a writ of habeus corpus to procure defendant to prosecute him. The defendant was subsequently arraigned on March 6, and the preliminary examination was held on March 15, 1982.

The prosecution first argues that the application of *People v Woodruff,* 414 Mich 130; 323 NW2d 923 (1982), is prospective only. Before *Woodruff,*

this Court was split on whether or not the 180-day rule, MCL 780.131; MSA 28.969(1), applied to prison inmates. *Woodruff* resolved the split, holding that it does. But even though it has limited retroactive activity, it applies to the present case:

"[T]his decision shall only apply to existing and future untried warrants, indictments, informations or complaints and to cases pending on direct review where the issue is preserved." 414 Mich 138. (Footnote omitted.)

In fact, the Supreme Court has been applying it retroactively. *E.g., People v Charles Moore,* 417 Mich 878; 329 NW2d 304 (1983); *People v Wheeler,* 414 Mich 966 (1982); *People v Jerrils,* 414 Mich 935 (1982).

The next issue in this case concerns when the 180 days started. The prosecution claims that it started October 17, 1981, when defendant was brought back to Michigan. Defendant claims it started June 29, 1981, when the complaint was issued. Actually, which date we choose does not matter because we reach the same result either way. If we use June 29, we do not count the time between June 29 and October 17, because defendant was then an escapee fighting extradition. The prosecution could not have taken good faith efforts to bring defendant to trial within this time. We do not require it to do a useless act. Accordingly, the 180-day period was tolled during this time. *People v Thomas,* 21 Mich App 465, 472; 175 NW2d 540 (1970).

We hold that the trial court erred in dismissing this case. *People v Castelli,* 370 Mich 147; 121 NW2d 438 (1963), is almost directly on point. On November 2, 1960, the Oakland prosecutor issued a warrant against the defendant. At that time, he

was in the Wayne County jail. However, the Wayne County prosecutor failed to deliver him to the Department of Corrections until March 3, 1961. The Oakland prosecutor failed to petition for a writ of habeas corpus until August 25, 1961. The Supreme Court held that the 180 days started to run on March 3.[1] By August 25, when the petition for habeas corpus was filed, the 180 days had not quite elapsed. The Supreme Court held that jurisdiction had not been lost.

The 180-day rule does not require the prosecution to bring the defendant to trial within that period. Instead, it requires that the prosecution expend good faith efforts to commence proceedings against the defendant within 180 days. *People v Hendershot,* 357 Mich 300; 98 NW2d 568 (1959); *People v Hegwood,* 109 Mich App 438; 311 NW2d 383 (1981); *People v Anglin,* 102 Mich App 118; 301 NW2d 470 (1980); *People v Downing,* 31 Mich App 31; 187 NW2d 263 (1971), *lv den* 386 Mich 761 (1971). By the time the prosecution petitioned for habeas corpus, only 132 days had elapsed. In fact, the 180 days had not expired by the time defendant was arraigned or the preliminary examination held. Holding the preliminary examination within the 180-day period sufficiently complies with the rule. *People v Stephens,* 103 Mich App 640; 303 NW2d 51 (1981), *lv den* 413 Mich 912 (1982); *People v Asher,* 32 Mich App 380, 385; 189 NW2d 148 (1971), *lv den* 385 Mich 767 (1971); *People v Linscott,* 14 Mich App 334; 165 NW2d 514 (1968), *lv den* 381 Mich 807 (1969). Because the prosecution did commence proceedings within 180

---

[1] This particular conclusion was *sub silentio* overruled in *People v Hill,* 402 Mich 272, 280-281; 262 NW2d 641 (1978). However, *Hill* did not affect the rule's interpretation that the court does not lose jurisdiction if the prosecution takes "good-faith action within that time to ready the case for trial". 402 Mich 281.

days, the trial court erred in ruling that jurisdiction had been lost.

Reversed and remanded.

D. F. WALSH, P.J. *(concurring).* I concur in reversal of the trial court's order granting defendant Benny Gambrell's motion to dismiss.

The trial court in this case ruled that the 180-day statutory period, MCL 780.131; MSA 28.969(1), began to run on October 17, 1981, the day defendant was brought back to Michigan after waiving extradition in Arkansas. After careful review of the record, I am persuaded that the trial court was correct in so ruling.

The record indicates that defendant was an escapee on June 28, 1981, the day of the charged offense, and that he was not in custody when the manslaughter warrant was issued.[1] Under the test enunciated by the Supreme Court in *People v Hill,* 402 Mich 272, 280-281; 262 NW2d 641 (1978), the statutory period did not begin to run upon issuance of the warrant, since defendant was not incarcerated in a state prison or under detention in a local facility awaiting such incarceration at that time. 402 Mich 280-281 (condition 1). Rather, the statutory period began to run when, while the warrant was pending, defendant was returned to Michigan for incarceration. 402 Mich 281 (condition 2).

I agree fully with my colleagues' conclusion that, during the 180-day period following defendant's return to Michigan, the prosecution took

---

[1] According to a Department of Corrections employee, "We were advised on June 30, 1981, that he, effective June 28, 1981, Mr. Gambrell was a fugitive from our department, was an escapee." And, according to the officer in charge, defendant was not in custody when the warrant was issued. Upon issuance of the warrant, he had:

"Contacted the correction officer where he was, man in charge of correction, halfway house where he was stationed as to any information they had on him. Contacted, talked with a girlfriend of his and placed him in the lien *[sic],* put a stop on him in our identification system."

good faith action to bring defendant to trial. *People v Hendershot*, 357 Mich 300, 304; 98 NW2d 568 (1959). The trial court, therefore, did not lose jurisdiction.

BEASLEY, J. *(concurring in result).* I concur in the result, but write separately to indicate my reasons.

Failure to bring an inmate to trial on untried warrants within 180 days triggers application of the 180-day rule.[1] At that point, the burden falls on the prosecution to justify the delay. I agree with that part of Judge WALSH's concurring opinion in which he concludes that the 180-day period began to run in October, 1981, when defendant was extradited to Michigan from Arkansas.

I accept as accurate the representation that the delay from October, 1981, to February 26, 1982, was no fault of the prosecution. But neither was it the fault of defendant. The purpose of the statute is to secure a speedy trial for inmates.[2] Thus, good faith effort by the prosecutor does not necessarily stop the 180-day period from running.[3]

In the within case, the 180-day period would have expired in April, 1982. In March, 1982, defendant was arraigned and both a preliminary examination and a so-called calendar conference were

---

[1] MCL 780.131; MSA 28.969(1), which provides in part:

"* * * such inmate shall be brought to trial within 180 days after the department of corrections shall cause. to be delivered to the prosecuting attorney of the county in which such warrant, indictment, information or complaint is pending written notice of the place of imprisonment of such inmate and a request for final disposition of such warrant, indictment, information or complaint."

[2] *People v Hill,* 402 Mich 272, 280; 262 NW2d 641 (1978).

[3] See *People v Forrest,* 72 Mich App 266, 269; 249 NW2d 384 (1976), where we said:

"* * * any delay occasioned by the failure of the court to act cannot be permitted to defeat the intendment of the statute."

Also, see *People v Pitsaroff,* 102 Mich App 226; 301 NW2d 858 (1980), *rev'd and rem'd* 411 Mich 941; 308 NW2d 98 (1981).

held. When defendant moved to dismiss[4] under the 180-day rule, the trial court granted dismissal on May 25, 1982. This ruling by the trial court was premature. At that point, jurisdiction had not been lost. I would reverse the trial court and order the matter set down for prompt trial.

---

[4] The motion was dated April 19, 1982, and filed April 20, 1982.